IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON L. SHALLENBERGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-224 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Magistrate Judge Maureen P. Kelly |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiff Jason L. Shallenberger ("Shallenberger") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("Act") [42 U.S.C. §§ 401-433]. For the reasons that follow, the decision of the Commissioner will be vacated, and the case will be remanded to him for further administrative proceedings.

**II.   PROCEDURAL HISTORY**

Shallenberger protectively applied for disability insurance benefits on December 28, 2007, alleging disability as of August 14, 2007, due to injuries resulting from a motor vehicle accident. (R. at 78, 104). The application was administratively denied on March 24, 2008. (R. at 43). Shallenberger responded on April 2, 2008, by filing a timely request for an administrative hearing. (R. at 48-49). On July 2, 2009, a hearing was held before Administrative Law Judge O. Price Dodson (the "ALJ"). (R. at 20). The ALJ presided over the hearing from Norfolk,

Virginia, by means of an electronic video-conferencing apparatus. (R. at 11). Shallenberger, who was represented by counsel, appeared in Erie, Pennsylvania, and testified at the hearing. (R. at 23-36). Paula C. Day ("Day"), an impartial vocational expert, also testified at the hearing. (R. at 37-39). In a decision dated August 4, 2009, the ALJ determined that Shallenberger was not "disabled" within the meaning of the Act. (R. at 8-19). The Appeals Council denied Shallenberger's request for review on July 1, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 1). Shallenberger commenced this action on September 7, 2010, seeking judicial review of the Commissioner's decision. (ECF No. 1). Shallenberger and the Commissioner filed motions for summary judgment on February 4, 2011, and March 16, 2011, respectively. (ECF Nos. 9 & 12). In accordance with 28 U.S.C. § 636(c)(1), the parties have consented to have this matter adjudicated by a United States magistrate judge. (ECF Nos. 6 & 7). The cross-motions for summary judgment filed by the parties are the subject of this Memorandum Opinion.

### III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions.  He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).  The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to

4

>   be a more adequate or proper basis. To do so would propel the court into the
>   domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.   THE DECISION OF THE ALJ

In his decision, the ALJ determined that Shallenberger had not engaged in substantial gainful activity subsequent to his alleged onset date. (R. at 13). Shallenberger was found to be suffering from an L5/S1 disc herniation, multiple cervical disc herniations, post concussive syndrome, a torn left medial collateral ligament, and headaches. (R. at 13). These impairments were deemed to be "severe" within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii). (R. at 13). The ALJ concluded that Shallenberger's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). (R. at 13-14).

In accordance with 20 C.F.R. § 404.1545, the ALJ determined that Shallenberger had the residual functional capacity to engage in a range of "light"[1] work involving only simple, repetitive tasks. (R. at 14). Shallenberger had "past relevant work"[2] experience as an auditor for the Commonwealth of Pennsylvania. (R. at 17, 37). Day classified Shallenberger's prior

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. § 404.1560(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576.

position as a "skilled"[3] position at the "medium"[4] level of exertion. (R. at 37). Since that position required the performance of tasks that were deemed to be beyond Shallenberger's residual functional capacity, it was determined that he could not return to his past relevant work. (R. at 17).

Shallenberger was born on December 29, 1971, making him thirty-five years old on his alleged onset date and thirty-seven years old on the date of the ALJ's decision. (R. at 17, 23). He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 404.1563(c). He had more than a high school education and an ability to communicate in English.[5] (R. at 17, 24); 20 C.F.R. § 404.1564(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Shallenberger could work as an office helper, an order caller, or a warehouse checker. (R. at 18). Day's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A).[6] (R. at 38).

## V. DISCUSSION

Shallenberger was involved in an automobile accident on August 14, 2007. (R. at 257). Another vehicle apparently crashed into the driver's side of Shallenberger's vehicle while he was driving, causing him to sustain significant injuries. (R. at 257). In the aftermath of the incident,

---

[3] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).
[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).
[5] Shallenberger testified that he had received a master's degree in business administration. (R. at 24).
[6] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

Shallenberger was hospitalized at the University of Pittsburgh Medical Center's Northwest facility ("UPMC Northwest"), where he remained for three days. (R. at 257). A magnetic resonance imaging ("MRI") scan of Shallenberger's lumbar spine revealed that he had suffered a herniation of his L5/S1 disc. (R. at 168). He was discharged by UPMC Northwest on August 17, 2007, but he never returned to work. (R. at 119, 257).

Shallenberger challenges the ALJ's determinations at the third and fifth steps of the sequential evaluation process. (ECF No. 10 at 3-12). He argues that the ALJ erred in failing to analyze his impairments under Listing 1.05C. (*Id.* at 5-7). He also contends that the ALJ's residual functional capacity finding and corresponding hypothetical question to Day were deficient, thereby rendering Day's testimony unreliable. (*Id.* at 3-5, 7-12). In addition, Shallenberger asserts that the ALJ failed to properly account for his subjective complaints. (*Id.* at 7-9).

The Listing of Impairments describes impairments which render a claimant *per se* disabled without regard to his or her age, education, or past work experience. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled, a claimant must demonstrate that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* at 531. The claimant bears the burden of presenting evidence to support his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

7

An applicant must be an amputee in order to be *per se* disabled under Listing 1.05. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.05. As the Commissioner points out, Shallenberger's argument concerning Listing 1.05 appears to be based on an outdated or obsolete version of the Listings. (ECF No. 13 at 22-23). Nevertheless, the ALJ's finding at the third step of the sequential evaluation process consisted only of a conclusion that Shallenberger was not *per se* disabled. (R. at 13-14). The ALJ never identified the specific Listings under consideration or explained why the applicable requirements were not met. (R. at 13-14). In *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119-120 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit held that such a "hopelessly inadequate" analysis warranted a remand for further proceedings, since the challenged factual finding was "beyond meaningful judicial review." The Court of Appeals explained in a footnote that it is the responsibility of the Commissioner to identify the Listings relevant to a claimant's case, and to explain why the claimant's impairments do not meet or medically equal those Listings. *Burnett*, 220 F.3d at 120, n. 2. The rule established in *Burnett* is consistent with the express language of the Act, which requires the Commissioner to state his reasons for denying a claimant's application for benefits. 42 U.S.C. § 405(b). The ALJ's analysis in this case was clearly inadequate to facilitate meaningful judicial review. (R. at 13-14). Because a remand is required for other reasons, the Court has no occasion to consider whether Shallenberger's failure to identify a *current* Listing would otherwise obviate the need for further proceedings based on the ALJ's failure to explain the rationale for his step-three determination. *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 93 (3d Cir. 2007). It suffices to say that Shallenberger must be afforded another opportunity to present evidence relating to the issue of

*per se* disability during the course of the ensuing administrative proceedings. *Thomas v. Commissioner of Social Security*, 625 F.3d 798, 800-801 (3d Cir. 2010).

Shallenberger's attack on the ALJ's residual functional capacity finding (and corresponding hypothetical question to Day) concerns the weight accorded to both his testimony at the hearing and the opinions of his treating and examining physicians. (ECF No. 10 at 3-5, 7-12). Dr. Vincent J. Paczkoskie, who was retained solely to address Shallenberger's knee impairment, opined on October 22, 2007, that Shallenberger could perform the duties of a light job on a full-time basis. (R. at 182). Dr. Paczkoskie rendered his opinion after reviewing the results of an MRI scan showing that Shallenberger had suffered a "torn medial collateral ligament" in his left knee. (R. at 182).

Dr. Monty Van Beber, Shallenberger's primary care physician, reported on December 12, 2007, that Shallenberger had a "limited ability" to work. (R. at 248). Dr. Van Beber indicated that, between December 31, 2007, and February 28, 2008, Shallenberger could be expected to perform a range of light work involving only occasional climbing, kneeling, crawling, squatting, crouching, bending, twisting, rotating and driving.[7] (R. at 477). Shallenberger apparently told Dr. Van Beber that his back problems were preventing him from driving for more than two hours at a time. (R. at 248).

Dr. John F. Delaney performed a consultative physical examination of Shallenberger on February 11, 2008. (R. at 363-365). The examination was apparently conducted to assess Shallenberger's continuing eligibility for workers' compensation benefits. (R. at 365). Dr. Delaney found Shallenberger to be "totally disabled." (R. at 368). According to Dr. Delaney, Shallenberger was incapable of working "because of the intractability of his headaches." (R. at

---

[7] Dr. Van Beber's assessment form also contained notations indicating that Shallenberger's standing, walking, sitting, lifting and carrying abilities were limited. (R. at 477). Those limitations, however, are generally incorporated within the definition of light work. 20 C.F.R. § 404.1567(b).

9

365).  Dr. Delaney predicted that, with proper treatment, Shallenberger's headaches would improve within three to six months.  (R. at 365).

Dr. Douglas Schiller, a nonexamining psychiatric consultant, opined on February 28, 2008, that Shallenberger had no medically determinable mental impairment.  (R. at 369).  He specifically noted that Shallenberger had not sought mental health treatment subsequent to the accident.  (R. at 381).

On March 3, 2008, Dr. Dilip S. Kar, a nonexamining medical consultant, expressed the view that Shallenberger could perform an unlimited range of light work.  (R. at 382-388).

Shallenberger reported on April 16, 2008, that he could only walk for thirty minutes or sit for one hour before experiencing pain.  (R. at 433).  Dr. William Donaldson, a treating physician, recommended that Shallenberger "start doing more activity and try to get back into a more mainstream life."  (R. at 433).  Shallenberger was apparently reluctant to resume his regular activities because he did not want to aggravate his herniated disc.  (R. at 433).  Dr. Donaldson told Shallenberger that the disc herniation was not "a significant problem that would require surgery."  (R. at 433).

Dr. Betty Liu began treating Shallenberger on June 11, 2008.  (R. at 532-533). Shallenberger complained of "chronic headaches" and frequent pain in his upper and lower back.  (R. at 533).  Dr. Liu indicated that Shallenberger could potentially return to work, provided that he was not required to engage in "prolonged driving."  (R. at 534).  On July 30, 2008, however, Dr. Liu reported that Shallenberger could return to work only if he avoided "prolonged driving" and "stay[ed] at the sedentary limitations."[8]  (R. at 530).

---

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

Dr. Tammy Kordes performed a neuropsychological evaluation of Shallenberger on August 22, 2008.  (R. at 448).  During the course of the evaluation, Shallenberger complained of frequent headaches and expressed concerns about "his ability to be successful on the job."  (R. at 448-449).  Dr. Kordes determined that Shallenberger's "cognitive deficits could impact his ability to be successful at work."  (R. at 450).  She suggested that when Shallenberger was "released to return to work, he may need an abbreviated work day with some increased supervision to monitor any errors, given his job as an auditor."  (R. at 450).

At the hearing, Shallenberger testified that he frequently bathed in a hot tub in order to relieve the pain in his back.  (R. at 26).  He stated that the accident had caused him to stop golfing, and that he sometimes needed his wife's assistance to put on his shoes.  (R. at 27).  When questioned about his back impairment, Shallenberger described "constant pain" that was "varie[d] in level."  (R. at 29).  He testified that his left knee had often felt like it was "going to give out," causing him to place more weight on his right leg.  (R. at 30).  Shallenberger also complained of concentration difficulties, dizziness and headaches.  (R. at 28).  He attributed some of the dizziness to his medications.  (R. at 34).  Shallenberger further explained that his medical condition had caused him to become depressed.  (R. at 34-35).

In determining Shallenberger's residual functional capacity, the ALJ accorded "little weight" to Dr. Schiller's assessment, "significant weight" to Dr. Kar's opinion, and "some weight" to the views expressed by Dr. Van Beber and Dr. Kordes.  (R. at 17).  The ALJ accommodated Shallenberger's physical limitations by limiting him to light work and accommodated his mental limitations by limiting him to jobs involving only the performance of simple, repetitive tasks.  (R. at 14, 17).  Day testified that an individual with those limitations could work as an office helper, an order caller, or a warehouse checker.  (R. at 37-38).  In

response to a follow-up question, Day stated that an individual who frequently needed to take unscheduled breaks would be precluded from all forms of competitive work existing in significant numbers in the national economy. (R. at 38). When questioned by Shallenberger's counsel, Day clarified that an individual who needed to sit or stand at his or her option could maintain the positions identified in her testimony. (R. at 39). Nonetheless, Day testified that an individual who could not read instructions, or who needed to miss work more than two times per month, would not be able to perform the duties required of individuals holding those jobs. (R. at 39).

Where the record contains evidence of a medically determinable impairment that could reasonably be expected to produce the symptoms reflected in a claimant's testimony, the Commissioner must give serious consideration to that testimony. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). In this case, the record contains evidence establishing that Shallenberger suffers from a herniated disc in his back and a torn medial collateral ligament in his left knee. (R. at 168, 182). These impairments could reasonably be expected to produce the limitations described by Shallenberger at the hearing. (R. at 27-30). They could likewise be expected to result in several of the specific postural limitations identified by Dr. Van Beber on December 12, 2007. (R. at 477).

From a physical standpoint, the ALJ's residual functional capacity assessment reflected an individual who could perform an unlimited range of light work activities. (R. at 14, 17). Aside from the requirement that the work involve only simple, repetitive tasks, the ALJ's residual functional capacity determination accounted for no limitations that were not specifically incorporated within the regulatory definition of the term "light work." (R. at 14, 17). In other words, the ALJ essentially concluded that Shallenberger could engage in an *unlimited* amount of

climbing, balancing, crawling, squatting, crouching, stooping or bending. This conclusion was clearly contrary to both the documentary evidence contained in the record and the testimony provided by Shallenberger at the hearing. (R. at 27-30, 477).

In his consultative report, Dr. Kar opined that Shallenberger was physically capable of performing the full range of light work. (R. at 382-388). The ALJ accorded "significant weight" to Dr. Kar's assessment in determining Shallenberger's residual functional capacity. (R. at 17). The opinion of a nonexamining medical consultant, however, does not ordinarily constitute "substantial evidence" when it is contradicted by the opinion of a treating physician. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). Dr. Van Beber found Shallenberger to be limited to only occasional postural maneuvers. (R. at 477). The limitations identified by Dr. Van Beber were consistent with some of Shallenberger's subjective complaints. (R. at 27-30). Simply put, the record fails to support the ALJ's assessment of Shallenberger's physical capabilities and limitations.

The Court acknowledges that Day, when questioned by Shallenberger's counsel, testified that an individual who needed to sit or stand at will could work as an office helper, an order caller, or a warehouse checker. (R. at 39). Thus, Shallenberger's alleged need for a sit/stand option would not have altered the disposition of his claim even if the ALJ had accounted for it. That accommodation, however, does not necessarily incorporate all of Shallenberger's postural limitations. For instance, Shallenberger testified that he sometimes needed his wife's assistance in order to put on his shoes. (R. at 27). The postural maneuvers necessary to tie or fasten one's own shoes cannot be easily analogized to the acts of sitting and standing.

An employee performing the duties of a sedentary job is rarely expected to engage in postural activities. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

Nevertheless, the ALJ found Shallenberger to be capable of performing a wide range of *light* work. (R. at 14-17). The testimonial record is silent as to whether the jobs identified by Day would require the performance of tasks that are beyond Shallenberger's physical capacity. (R. at 37-39). Day was never asked about postural limitations. (R. at 37-39). A residual functional capacity determination (and corresponding hypothetical question) must particularly describe all of a claimant's specific limitations. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). By concluding that Shallenberger was physically capable of performing a virtually unlimited range of light work, the ALJ painted with far too broad of a brush. There is substantial evidence of significant disability.

The Court does not mean to suggest that the ALJ was required to account for every limitation *alleged* by Shallenberger. The ALJ was free to reject limitations that were not *credibly established*, and to disregard vocational expert testimony pertaining to those limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Nonetheless, it does not follow that the ALJ acted within his discretion by rejecting every physical limitation apart from those incorporated within the definition of light work. At an absolute minimum, the ALJ was required to explain why he credited Dr. Kar's consultative opinion rather than Dr. Van Beber's assessment. *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003).

Relying on the Supreme Court's decision in *Shinseki v. Sanders*, 556 U.S. 396, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009), the Commissioner invites the Court to affirm his decision on the ground that any errors committed by the ALJ were harmless. (ECF No. 13 at 21). In *Sanders*, the Supreme Court explained that a party challenging an agency's ultimate determination on the basis of an underlying error ordinarily bears the burden of establishing that he or she has been harmed by that error. *Sanders*, 129 S.Ct. at 1705-1706. The Commissioner evidently believes

that none of the ALJ's errors were material to his final decision denying Shallenberger's application for benefits.  (ECF No. 13 at 21-22).

The statute at issue in *Sanders* was a provision of the Veterans Claims Assistance Act of 2000 ("VCAA") requiring the Secretary of Veterans Affairs ("Secretary") to provide veterans seeking disability benefits with appropriate notice when additional evidence was needed to substantiate their claims.  Pub. L. No. 106-475, § 3; 114 Stat. 2096, 2096-2097 (2000); 38 U.S.C. § 5103(a).  The Supreme Court held that where the Secretary fails to comply with the statutory notice provision, a reviewing court should not automatically presume that the failure has prejudiced the claimant.  *Sanders*, 129 S.Ct. at 1704-1706.  It was noted that the party seeking to have a judgment set aside because of an erroneous ruling ordinarily bears the burden of showing that he or she has been prejudiced by the error.  *Id.* at 1705-1706.  Importantly, the holding in *Sanders* was controlled by a specific statutory provision requiring the Court of Appeals for Veterans Claims to "take due account of the rule of prejudicial error."  38 U.S.C. § 7261(b)(2).

The situation in this case differs meaningfully from the situation in *Sanders*.  "At the fifth step of the sequential evaluation process, the Commissioner bears the burden of *proving* the existence of jobs in the national economy that are consistent with the claimant's residual functional capacity and vocational background."  *Crock v. Astrue*, Civil Action No. 08-680, 2010 WL 2640324, at *7, 2010 U.S. Dist. LEXIS 65719, at *21 (W.D.Pa. July 1, 2010)(emphasis in original).  The error at issue in this case directly relates to the Commissioner's failure to meet his evidentiary burden.  *Id.*  It is not comparable to the error discussed in *Sanders*, which concerned only the Secretary's alleged failure to comply with the statutory notice provision.  *Sanders*, 129 S.Ct. at 1704-1706.  *Sanders* did not displace the longstanding rule prohibiting a reviewing court

from affirming the Commissioner's decision denying an application for benefits on a ground other than that actually relied upon by the Commissioner. *Fargnoli*, 247 F.3d at 44, n. 7.

For the foregoing reasons, the Commissioner's decision is clearly not "supported by substantial evidence." 42 U.S.C. § 405(g).

The only remaining question is whether the proper remedy is an immediate award of benefits, or whether a remand for further administrative proceedings is warranted. A judicially-ordered award of benefits is proper only where the evidentiary record has been fully developed, and where the evidence contained therein "clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). Shallenberger cannot satisfy this standard. Most of his treating physicians found him to be capable of working at some level. (R. at 182, 248, 277, 433, 530, 534). Only Dr. Delaney, a one-time examiner, found Shallenberger to be "totally disabled." (R. at 368). Since Dr. Delaney predicted that Shallenberger's condition would improve within three to six months, the "disability" referenced in his examination report would not have lasted long enough to satisfy the Act's twelve-month durational requirement. (R. at 365); *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Although Dr. Kordes believed Shallenberger to be incapable of working more than a full year after the accident, her opinion appears to have been rendered only with specific reference to Shallenberger's past relevant work as an auditor. (R. at 450). Under these circumstances, the proper remedy is a remand for further consideration of Shallenberger's claim rather than an award of benefits.

## VI.   CONCLUSION

The ALJ's conclusion at the third step of the sequential evaluation process is unsupported by an explanation and, hence, "beyond meaningful judicial review." (R. at 13-14); *Burnett*, 220

F.3d at 119-120.  Despite the overwhelming documentary and testimonial evidence suggesting that Shallenberger suffers from several back, knee and head impairments, the ALJ determined that Shallenberger was physically capable of performing the full range of light work.  (R. at 14-17).  Consequently, the decision of the Commissioner is not "supported by substantial evidence."  42 U.S.C. § 405(g).  The Commissioner must give further consideration to Shallenberger's application for benefits.  During the course of the ensuing administrative proceedings, Shallenberger must be afforded "an opportunity to be heard."  *Thomas*, 625 F.3d at 801.

Accordingly, the Court will deny the Commissioner's motion for summary judgment (*ECF No. 12*), deny Shallenberger's motion for summary judgment (*ECF No. 9*) to the extent that it requests an immediate award of benefits, and grant Shallenberger's motion for summary judgment to the extent that it seeks a vacation of the Commissioner's decision, and a remand for further proceedings.  The "final decision" of the Commissioner will be vacated, and the case will be remanded to him for administrative proceedings consistent with this opinion.  An appropriate order follows.

                                                          BY THE COURT:

                                                          /s/ Maureen P. Kelly  
                                                          United States Magistrate Judge

cc:     All counsel of record